Good morning, Stephen Bergstein for the Plaintiff Appellant. The Plaintiff asserts a plausible claim that he was terminated because of his association with a disabled daughter in violation of the Americans with Disabilities Act. This is Rule 12, so all we really have is the complaint. Management had grown impatient with the plaintiff over plaintiff's family obligations. There's no dispute that he was late, I mean, admittedly only by a few minutes. Correct. He was late at some point toward the end of the timeline, but that doesn't establish as a matter of law that it was a legitimate reason to terminate him. Well, let's assume for the sake of argument that he was terminated solely because he was late on that one occasion. It may be a ridiculous thing for an employer to do, but this Court doesn't sit in judgment of employment decisions, you know, writ large. Why does that not suffice for their purposes? If they can prove after discovery that the only reason he was fired was because he came late that day, because maybe something happened on the day he was late and he couldn't do it, okay, then that's a defense. That's a legitimate defense, but that's not where we are here. Where we are here was that he was a valued employee for some period of time until he told them about his daughter. And then everything goes downhill. And there were comments made — But he also demanded accommodations, and the law is that he's not entitled to those accommodations. Correct. But the request for accommodations gives rise to an unfounded concern by management that this is going to be a problem for us. He's a new worker. He's requesting these accommodations. We say no. He continues to come in. He does a good job. But that signals to management unfairly that this is going to be a distraction and this is going to be a problem. Get rid of him. I mean, he's got a daughter who's sick. In your brief, you cite the fact that they didn't grant an accommodation as an evidentiary basis to conclude that there was improper discrimination. How can that be if the law is clear that you're not entitled to an accommodation? Because he's not suing over the fact that they didn't get accommodation. I mean, people sue because they don't get an accommodation because then they just don't come into work because they need the accommodation. It's evidence that they now know that his daughter is a concern for him. And requesting an accommodation, they now think to themselves, okay, we have a problem here. You know, he's requesting time off. We're not giving him time off. He's going to keep requesting it. It's an unfounded concern that his daughter's health is going to be a distraction. And there's no evidence, there's nothing in the complaint that confirms as a matter of law that his daughter's health is an actual distraction because he's still doing his job. Paragraph 15 says that it didn't affect his job duties. So this is all speculation on their part. And the reasonable accommodation denial is evidence that they have a concern that this concern on his part, Plano's part, is not going to go away. And so, you know, based on the plausibility standard and the minimal burden we have in establishing or pleading a prima facie case, this is enough to show that they had an unreasonable concern that his daughter's health was going to be a distraction for them. But it's not established as a matter of law in the complaint that his daughter's health was an actual distraction and that it made him a bad worker. It wasn't until he told them his daughter was sick that things went downhill. I want to talk a little bit about the legal standard because we only have one case that really addresses this, and that's the Graziadio case. And Graziadio gives us a three-part way of proving these cases, one of which is distraction. Now, it doesn't really matter what I think, but Graziadio does have a fairly narrow way of — It's not distraction. It's the fear of distraction. Right, right. Graziadio does set out what looks like a pretty narrow path to victory for plaintiffs in these cases. I just want to point out that other cases that address this issue, and including cases upon which Graziadio relies, do say that it's not an exhaustive test. And that includes the Stansbury case from 2011. And remember what the ADA says on associational discrimination. It's a straight — it's illegal to deny equal benefits and rights because the qualified individual is associated with somebody who's disabled. Nothing about distraction, nothing about cost, nothing about fear of a contagious disease. The congressional report on the ADA gives a hypothetical, which is a straightforward, you know, somebody's fired because their wife is disabled, nothing about distraction. So the three-factor test in Graziadio, I don't think it's the only way you can prove a case like this. It's one way to win. But on top of that, I take it part of your argument is that the relevant standard at this stage is provided by Littlejohn, which instead of a reasonable inference, the language in Graziadio requires only minimal inference of, you know, that could give rise to — Correct, correct, correct. But more broadly, it shouldn't just be limited to the three factors in Graziadio. And I don't think Graziadio actually says these are the only three ways to win. Other courts go beyond that. And, you know, it really should be interpreted the way we interpret the other civil rights statutes, because of — I see Graziadio as favorable to you. Graziadio, first of all, was a summary judgment case, which imposed a higher standard on the plaintiff, so that the case could — the summary judgment could be granted for the defendant, because of the plaintiff's failure to actually present evidence sufficient to reasonably support, so that it was not implausible that the plaintiff could win. But part of the reasoning of Graziadio was that the employer did not — that the employee did not plead, that the employer believed she would be distracted by the disability of the son. And you are — you are alleging that in this case. We are. And the reason I bring up the broader legal standard is that, to the extent that — As I understand it, Graziadio relied on the absence of evidence of what you are alleging here. Correct. Granting judgment for the defendant. Correct. Correct. I agree. The only reason I brought up the broader legal standard is that it strikes me that when you are alleging perceived distraction, I think we have it in this case. But it's a pretty high burden. It's a very narrow way for somebody to win, unless you can show cost or contagious disease. So to the extent this Court is having difficulty shoehorning this case or fitting this case into the distraction standard, I think the standard under the ADA should be broader, and the other courts say that it's broader. That's my point about emphasizing the nature of the Graziadio opinion. But I take it you're not saying that we need to go that far in order to — Correct. — do all in your favor. We could win just on the unfounded concern about distraction. Thank you. Good morning, Your Honors, and may it please the Court. My name is Brittany Primavera of Gordon and Reese. On behalf of Defendant Appelli, Fred A. Cook, Incorporated. Do you agree that we need to read Graziadio in light of the Littlejohn standard, that is to say on a 12b-6, that only a minimal inference of discrimination is required? I believe that even if we analyze the facts in this matter under that standard, the Littlejohn standard, Kelleher's complaint still fails to plead a plausible claim for associational discrimination in his actual allegations. Not just Littlejohn. I mean, there's a whole history of Supreme Court cases that affirm that before the employer comes out with a statement of reasons, the inference need only be minimal. Isn't that correct? Yes, Your Honor. This circuit in Graziadio, very rarely litigated area associational discrimination cases, it had the opportunity to follow the precedent adopted by other circuits, such as the Tenth Circuit in Den Hartog, but instead adopted the Seventh Circuit's ruling in Larimer, and they looked at the fourth element of the prima facie case, and they said, it's too tenuous, the basis. So how can we make this more clear for both parties? Let's try to modify the Den Hartog test a bit, and they did. So they narrowed it somewhat, yes, to make it more clear. Under these three theories, that being distraction theory, expense, disability by association, that can raise a discriminatory inference to satisfy that fourth element of a prima facie case. That was Larimer, and that's what the Second Circuit chose to do. They didn't look to other circuits for guidance and adopt those analyses of the elements. They looked to the Seventh Circuit. My question here is just whether the facts in the complaint are sufficient to state a claim with respect to the distraction theory. Let me give you a hypothetical. Let's say we were privy to the defendant's state of mind, and the defendant is totally satisfied with the particular employee's performance and conduct, but learns then that they have a disabled relative at home and is worried that that will cause a distraction, and basically says, you know what, I don't want this anymore, I've got to get rid of this person, and basically sits and waits until the employee, you know, is ten minutes late or commits some sort of de minimis infraction and then fires the person. Assuming that we can, you know, derive or divine the employer's state of mind, that would state a claim, correct? Correct. Okay, so how is this case different? Granted, we can't divine the state of mind, but as I see it, the complaint alleges that the employer was fully satisfied with the plaintiff's performance until learning that he had a sick relative and feared that there would be distraction, said, no, you have to, you can't rush home after the end of your shift, but the complaint I think is either silent with respect to whether that conduct continued or maybe even says that, you know, after being told that he couldn't rush home after the shift, he stopped doing so, and then nothing happens until he's ten minutes late and suddenly he's fired. I mean, why is that different than the hypothetical I gave you? Respectfully, Kelleher's complaint is different in the fact that in several paragraphs in his complaint, he admits that he could not work the entirety of his workday, and in paragraph 15 of his complaint, he admits, he concedes, that there was a requirement of all employees, not just limited to Kelleher, that they remain at work for the entire workday, including after the shift, all employees, not just him, for emergency work. He admits that. And in counsel's moving brief on page 9, he also admits that, that he needed time to accommodate his daughter, to drive to the hospital, to accommodate her needs. That's the plaintiff at the count. I thought that was in his earlier position. He was demoted from being a controller or something to being a laborer, and I thought that it was in the earlier position that it was expected that people who were responsible for the trucks, whatever it is, would work as long as necessary. He's a laborer. Kelleher is not arguing that there was a demotion and that was an adverse action. No, he's not. No, he's not, but it's the fact that the need to go home when overtime was required is something that transpired. While he had a more demanding position, he didn't object to becoming a laborer, possibly because it gave him more time flexibility. The issue here is that on numerous occasions, as pled by Kelleher, just taking all reasonable inferences, staring at the four corners of the complaint, he alleges that he put his employer on notice, he could not work the entire day, including after the end of the shift. On two occasions, he put him on notice and then did request reasonable accommodations. But is the complaint, I mean, in other words, it seems to me the complaint describes a chronology and in the first instance says I can't necessarily work the full day. He's told you have to and then is demoted, albeit not raising a claim with respect to that. And then the complaint is silent with respect to whether he is then meeting that requirement or not. In other words, you know, so number one, that. It seems to me that that's sort of bleeding into the second stage of the McDonnell-Douglas analysis and you're proffering what the explanation is for his firing and asking us to find that that's a legitimate nondiscriminatory reason. But the question here is whether he establishes a prima facie case, isn't it? And we don't believe he does. There was not a fear on behalf of Cook that he'd be inattentive at work. It was that he was not performing his job, not a question of fact, and that he needed to be absent, that what he required was a modified working schedule, that he couldn't stay later at the end of his shift, work the full day, the late day, as compared to his other employees, that he was unable to be there. That is what we're looking at. That is what he admits and alleges. You may be right, as the evidence would eventually develop. But when assessing a complaint, a complaint can allege different theories. And the issue for the sufficiency of the complaint is whether the complaint contains the sufficient allegations to sustain a particular theory. And it frequently happens that a plaintiff who's pleading different theories will plead facts in support of one theory that are harmful to the other theory. The plaintiff only needs to prevail on one of them, and the plaintiff isn't precluded from succeeding, at least so far as lodging a filing a sufficient satisfactory complaint, by the fact that some of the allegations that support one theory are harmful with respect to the other theory. If you find in the complaint sufficient allegations to support a theory, the complaint is valid, at least insofar as that theory is concerned, although perhaps another one might be dismissed. In every allegation in Kelleher's complaint to show evidence or to set forth that he believed that the fear of distraction was the driving force behind his termination, he alleges the requests and denials of accommodation, the fact that he needs to rush home to work, and that Keller told him he notified his employer in early March 2015 that he had a disabled daughter, allegedly, while taken on its face. On March 27, as alleged in Kelleher's complaint, his employer told him, you need to stop rushing home from work. We need all employees, not just the ones with disabled associates or relatives, to remain here. That's what you were hired to do, and you're not doing it. The complaint doesn't say that. Now, granted, it doesn't clearly say that he accepted it and agreed to abide by it, but again, we're at the 12B6 stage, so you're suggesting that it says that he's not living up to it, and I don't think the complaint says that. I respectfully disagree, Your Honor. Two days later, he called out of work because he had to drive home from a hospital. That is alleged in his complaint. And in paragraph 24, he explicitly states, Keller was terminated because he needed to leave work as soon as his shift ended in light of his daughter's serious disability. If he had not pled, perhaps, in paragraph 15, that that was a requirement of all employees, and he did not plead that similarly situated employees without disabled relatives or associates were not required to work late. He was being treated equally as everyone else. If he had not pled that, perhaps he would be successful. Unfortunately for Keller, he pled paragraph 15 in such a way, and paragraph 24, that he was terminated because of his need to leave work early. Why shouldn't he be granted leave to amend the complaint? If Your Honor is inclined to do that, I believe that the way the facts are pled in the complaint before the trial court and now on appeal here, they fail to cause a claim for associational discrimination under the ADA as the right to an accommodation under the ADA is limited to disabled employees and does not extend to associates and relatives. And that is exactly what Keller set forth in his complaint. Surely it's remarkable he was fired for coming in 15 minutes late. I mean, if everybody who came in 15 minutes late ever was fired, the workplaces would empty out. Well, as the district court noted in this matter, establishing too much time off of work entails in the context of an at-will employment is not for the court to decide. Why isn't there an available inference that he was fired for coming in 15 minutes late when I would guess discovery would show that plenty of people have come in 15 minutes late is because they figured, well, with this disabled daughter at home, he's going to be coming in late other times as well. In other words, a fear that he will be distracted by his daughter's condition and unable to perform his job. Perhaps if that was the only allegation, that would be true. There are several allegations. It would be true if that were the only allegation. If he didn't admit in paragraph 24 that the reason for his termination was him leaving his shift early, perhaps. So the complaint as alleged... I thought it was coming in late 15 minutes. No, and I'm quoting from the complaint, which starts at the joint appendix at page 11. He needed to leave work as soon as his shift ended in light of his daughter's serious disability. And again, in paragraph 15 of the complaint, he alleged that this was a requirement of all employees, including himself, not just those employees with non-disabled children or associates. There was not a fear of distraction here, that at work, Keller would be distracted. He was sufficiently distracted, so much so that he required an accommodation of shorter hours, needing to leave early to care for his daughter. And that exceeds the scope of the ADA and contravenes this circuit's precedent in Graziado, respectfully. Thank you. Paragraph 24 shows the unreasonable fear of distraction, because there's no claim in the complaint that he actually was distracted because he needed to take care of his daughter right after work ended. The complaint says their concern was speculative, that he couldn't work after hours for potential emergencies, and that was before he was demoted. In other words, if he says, I need an accommodation, they say, no, you can't have an accommodation. He says, but I need one. And they say, no, then you go get a different job. That's not a claim, is it? No, but then he stays on the job. No, in other words, if he says clearly, I can't do this job absent an accommodation, and they say, fine, then you don't have this job anymore. That is not a claim under Graziado, right? Correct. And isn't that what you allege in paragraph 24? No, 24 is, look at the whole complaint. He doesn't allege that he couldn't do the work. He still did the work. He still came in. He was demoted to laborer. But it does plead, maybe inartfully, that he was terminated because he adhered to the viewer, because he told them that he needed to leave work as soon as his shift ended. And elsewhere in the complaint, I think it makes clear that the employer viewed that as an employment, you know, as a condition of employment, that he had to stick around after his shift ended and not rush home. Well, because he told them, but that doesn't mean he wasn't able to do his work. By telling them, I need this accommodation, they think we have a problem now. He's going to keep asking for accommodations. This is going to be an issue. Let him go. He hasn't even been here a year. Find somebody who doesn't have these problems. But the complaint does not establish that he was causing problems or that his daughter's disability was causing problems on the job, justifying his termination. Am I right that the district court gave you an opportunity to amend and you opted not to take it? Correct. We think we took it as far as we could. Okay. Thank you. Thank you. Thank you both.